UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


WILLIAM TURNER, #32038-039,

                Petitioner,

                                CASE NO. 17-CV-13114
v.                              HONORABLE ARTHUR J. TARNOW

J. A. TERRIS,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION
## FOR A WRIT OF HABEAS CORPUS

## I.    Introduction

Federal prisoner William Turner ("Petitioner"), currently confined at the

Federal Correctional Institution in Milan, Michigan ("FCI Milan"), has filed a *pro*

*se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging a

prison disciplinary proceeding in which he was found guilty of assaulting another

inmate while at a satellite prison camp at the United States Penitentiary in Atlanta,

Georgia ("FPC Atlanta") and sanctioned with the loss of 27 days of good conduct

time in 2013. Respondent J. A. Terris is the warden at FCI Milan.

Petitioner was originally convicted of conspiracy to distribute cocaine base

over 50 grams in violation of 21 U.S.C. §§ 841, 846, and 851 and was sentenced to

a 240-month term of imprisonment and a 10-year term of supervised release in this

District in 2004. He currently has a projected release date of April 10, 2021.

## II.    <u>Facts and Procedural History</u>

Officials at FPC Atlanta charged Petitioner with assaulting another inmate

on April 3, 2013. According to the incident report, Petitioner entered the victim's

prison cube and held him down while another inmate struck him in the face

repeatedly with a lock in a sock. Petitioner was given a copy of the incident report

on April 26, 2013. Petitioner was advised of his rights and said that he had no

comment.

A hearing was conducted before the Unit Disciplinary Committee on April

29, 2013 and the matter was referred to the Discipline Hearing Officer ("DHO").

Petitioner was given written notice of the charge, the hearing, and his rights. He

requested staff representation and certain witnesses, including one inmate who

would testify that he saw the incident and two inmates who would testify that they

were asleep during the incident. Petitioner agreed to have a camp counselor

represent him and provided her with a list of witnesses whom she interviewed

before the hearing.

The hearing was conducted before the DHO on June 21, 2013.  Petitioner's representative presented statements from Petitioner's witnesses.  One inmate stated that he was watching other inmates play cards earlier and was not involved with the incident.  A second inmate stated that he was watching the Lakers game until midnight, went to sleep, and was awakened by another inmate and Petitioner because he was snoring.  A third inmate stated that inmates woke him up and he thought he heard Petitioner snoring.  A fourth inmate stated that he heard Petitioner sleeping.  A fifth inmate stated that he went to bed early.  Petitioner also submitted a written statement from a sixth inmate who stated that he was up late playing cards when the victim entered the TV room at about 1:30 a.m. with blood on his face and shirt and said that someone hit him.  The sixth inmate further stated that Petitioner entered the TV room 10 or 15 minutes later and asked why the victim was screaming.   The sixth inmate stated that he knew Petitioner had been asleep due to his loud snoring.

Petitioner denied the charge.  He said he was asleep and woke up to see that the victim had injuries.  Petitioner acknowledged that he had a prior argument with the victim, but that it was over and he would not have harmed him.  Petitioner

believed that the report was false and explained that plenty of inmates might not like him and could be trying to get him removed from the camp.

Relying upon the incident report and the investigation, the DHO found Petitioner guilty of assault based upon the greater weight of the evidence. The DHO cited the victim's identification of Petitioner in his statement and interviews with inmates in the area of the incident. The victim stated that he was in bed when someone grabbed him and he was hit in the fact. He woke up and saw a large black man leaving his cube. He said the man looked like Petitioner and also explained that he and Petitioner had an argument the previous day about the victim telling an officer where a phone was hidden. One inmate witness testified that Petitioner and another inmate were the ones who assaulted the victim, one grabbed him and the other hit him with a lock in a sock. A second inmate witness stated that the two men hit the victim over some cell phones. A third inmate witness indicated that he knew the man who hit the victim, but he did not know the other man. An inmate who resided in the same cube as the other man charged in the incident stated that he thought his cell mate was in bed, but he was not sure because he was not wearing his glasses and that he heard that his cell mate and

another man committed the assault. The DHO reviewed written statements and interviews from the investigation, as well as photographs of the victim showing injuries consistent with an assault, and photographs of Petitioner's knuckles and hands showing minor injuries consistent with being involved in an assault. Petitioner was sanctioned with the loss of 27 days of good time credit, 30 days in disciplinary segregation, and the loss of email and visiting privileges for six months. The DHO report was given to Petitioner on June 28, 2013.

Petitioner appealed the DHO's decision to the Regional Office asserting that he was not involved in the incident and submitting a statement, signed on August 5, 2013, from another inmate claiming responsibility for the assault. The Regional Director found that the inmate's new statement did not provide sufficient evidence to exonerate Petitioner of the assault charge and upheld the DHO's decision. Petitioner appealed to the Central Office for Inmate Appeals, which upheld the Regional Director's decision and denied the appeal.

Petitioner thereafter filed his federal habeas petition. Respondent has filed an answer to the petition contending that it should be denied.

### III.   <u>Discussion</u>

Petitioner challenges the DHO's decision claiming that:  (1) he is actually innocent of the assault because another inmate submitted an affidavit taking responsibility for the assault, and (2) there was insufficient evidence of his guilt and the disciplinary hearing was unfair because he was not allowed to present the evidence that he wanted and the evidence was unreliable.  Respondent contends that these claims lack merit.

Before examining Petitioner's claims, it is appropriate to review the due process requirements applicable to prison disciplinary proceedings and the standard of review for such proceedings.  Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a criminal defendant in such a case do not apply.  As enunciated by the United States Supreme Court, the minimum due process requirements for a prisoner in a disciplinary hearing are:  (1) written notice of the charges at least 24 hours before the hearing; (2) the opportunity to call witnesses and present evidence at the hearing; and (3) a written statement by the factfinder of the evidence relied upon

and the reason for any action taken. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

The decision of a prison disciplinary body must be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985). A reviewing court, however, need not examine the complete record, assess witness credibility, or weigh the evidence. Rather, the relevant issue is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. With these standards in mind, the Court will review Petitioner's claims.

Petitioner first raises an actual innocence claim. Claims of actual innocence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.* In *House v. Bell*, the United States Supreme Court declined to answer the question left open in Herrera – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v.*

*Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the United States Court of Appeals for the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [Petitioner] is not entitled to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844, 854–55 (6th Cir. 2007); *see also Sitto v. Lafler*, 279 F. App'x 381, 381-82 (6th Cir. 2008) (affirming denial of habeas relief on similar claim); *Thomas v. Perry*, No. 2:11-CV-14363, 2013 WL 1747799, *6 (E.D. Mich. April 23, 2013) (denying habeas relief on newly-discovered evidence claim). Petitioner thus fails to state a claim upon which relief may be granted as to this issue. Habeas relief is not warranted on this claim.

Petitioner also asserts that there was insufficient evidence to find him guilty of the assault. This claim lacks merit. The record reveals that the DHO reviewed all of the evidence presented at the DHO hearing and relied upon the incident report, the victim's statement, several witnesses' statements, and the photographs of the victim's injuries and Petitioner's hands in finding Petitioner guilty of the assault. Accordingly, the Court finds that the disciplinary decision is supported by sufficient evidence in the record. The fact that Petitioner denied the allegation and presented conflicting evidence is of no consequence.[1] "'Some evidence' is all that is needed to support the action of a prison disciplinary board." *Williams v. Bass*, 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent v. Hill, supra*). It is not the function of the federal courts to assess the credibility of witnesses or to weigh the evidence. *Id.* Habeas relief is not warranted on this claim.

Lastly, Petitioner asserts that his due process rights were violated during the disciplinary hearing process. This claim is belied by the record. As discussed, due process for a prison disciplinary proceeding requires: (1) written notice of the

---

[1]The Court notes that the affidavit from the inmate claiming responsibility for the assault is dated after the DHO's decision and was not presented at the disciplinary hearing. The statement also conflicts with the inmate's prior statement concerning his knowledge of the incident.

9

charges at least 24 hours before the hearing; (2) the opportunity to call witnesses and present evidence at the hearing; and (3) a written statement by the factfinder of the evidence relied upon and the reason for any action taken. *See Wolff, supra.* Petitioner received notice of the charge well more than 24 hours before the hearing, he had the opportunity (and took advantage of the opportunity) to present witness statements and other evidence in his defense, and he was given a written statement by the hearing officer informing him of the decision and its underlying basis. That is all the process that he was due.

The fact that some witness statements were given verbally to Petitioner's representative rather than submitted in writing or that certain witnesses gave written statements rather than appearing in person at the hearing does not affect this determination. The Supreme Court has recognized that a prisoner does not have an unqualified right to present evidence or live testimony. *See Wolff*, 418 U.S. at 566 (providing that a prisoner "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. In this case, the DHO explained that the witnesses were not present at the

hearing because they were minimum security inmates housed at the satellite prison camp outside the secured confines of USP Atlanta. Petitioner's representative, however, was allowed to interview those witnesses and present their statements verbally and/or in writing. Given such circumstances, Petitioner was afforded sufficient due process. Habeas relief is not warranted on this claim.

## IV.    Conclusion and Order

For the reasons stated, the Court concludes that Petitioner's constitutional rights were not violated during the disputed disciplinary proceedings and that the disciplinary decision is adequately supported by the evidence in the record. Accordingly, the Court **DENIES** the petition for a writ of habeas corpus.

**IT IS ORDERED**.


S/Arthur J. Tarnow
ARTHUR J. TARNOW
UNITED STATES DISTRICT JUDGE

Dated:  November 1, 2018